MISSOURI, KANSAS & TEXAS RAILWAY COMPANY VS
BYRNE, ASSIGNEE.

Opinion delivered, January 12, 1899.

*1. Pleading—Complaint—Tort.*

A complaint which alleged that defendant was engaged in shipping cattle over its road and kept and maintained at certain points pens for the purpose of receiving cattle intended for shipment over its line, and that cattle owned by plaintiff and by him placed in such pens with the knowledge and consent of defendant, escaped from such pens because of defendant's negligence in their construction, recites a cause of action based upon a tort, and not upon contract.

*2. Evidence—Declarations of Deceased Agent.*

Declarations of an agent of defendent, within the scope of his authority, are binding upon the defendant; and such declarations may be admitted in evidence after the death of the agent.

*3. Carrier—Negligence—Damages.*

Where a carrier furnished pens for the receipt of cattle intended for shipment over its line, and such pens have been so negligently constructed or so illy maintained as to be insufficient to hold cattle, the carrier is liable for damages caused by the loss of and injury to cattle escaping therefrom.

Appeal from the United States court for the Northern district.

WILLIAM M. SPRINGER, Judge.

Action by Patrick J. Byrne, assignee of Grayson Bros., against the Missouri, Kansas & Texas Railway Company. Judgment for plaintiff. Defendant appeals. Affirmed.

The original complaint was filed February 24, 1893, by Grayson Bros., plaintiffs, against the Missouri, Kansas & Texas Railway Company, defendant. Afterwards, and on the 11th day of December, 1895, Grayson Bros. made an assignment for the benefit of creditors to Patrick J. Byrne, as assignee, who was substituted as plaintiff by order of court. It appears from the record that several complaints had been filed in this case, to which objection had been taken, but that the case was tried upon the fourth amended complaint, which was itself amended, and the answer of defendant to the fourth amended complaint as amended. The plaintiff below and appellee here alleged, for a first cause of action, that on the 20th day of December, 1892, the defendant was engaged in shipping cattle, and kept and maintained at Eufaula, Ind. T., "pens and yards for the purpose of receiving cattle intended for shipment over the line of railway of said defendant, and on the date above mentioned, with the knowledge and consent and direction of said railway company, the assignors of the plaintiff caused to be driven, and, with due care on their part, to be placed in said pens or yards, one hundred and fifty head of cattle, for the purpose of being shipped over the line of railway of said defendant, and the said railway company had so carelessly and negligently constructed and cared for the said pens or yards, of which carelessness and negligence the assignors of this plaintiff had no notice or knowledge, that the said pens or yards were insufficient and unsafe for the purpose of yarding cattle, and during the night of said day, without any fault on the part of the assignors of this plaintiff, the said cattle escaped from said pens or yards and ran at large, and, without any fault on the part of the assignors of this plaintiff," 19 head so escaping were run over by defendant's train and killed; that 40 head were lost, and the value thereof was $25 per head; that said assignors were put to $100 expense in rounding up the balance, and that 91 head were

damaged by so running at large to the amount of $2.50 per head. For a second cause of action plaintiff alleged: "Said cattle, without any fault on the part of the assignors of this plaintiff or either of them, and without the knowledge of the assignors of this plaintiff or either of them, the said cattle went at large, and, without any fault on the part of the assignors of this plaintiff or either of them, said cattle went upon and along the railway track of the said defendant, at or near the said station of Eufaula, in said Northern district, and, while said cattle were so at large and so upon and along said railway track, the servants and employees of the said defendant so carelessly and negligently managed and operated a locomotive engine and train of cars running upon its said line of railway that when near the said station the said locomotive engine and train of cars ran into, against, and over a large number of said cattle, and killed of them nineteen head thereof, of the value of twenty-five dollars ($25.00) per head." That by reason of said carelessness and negligence the assignors of plaintiff were damaged in the sum of $1,802.50. The defendant below, the appellant here, filed its answer, specifically denying each and every material allegation of plaintiff's complaint. The case was tried before a jury, who returned a verdict for plaintiff upon both counts of the complaint; Under first count, for injury to the cattle recovered; for 37 head never recovered, but not killed by train; and for time and expense in gathering cattle,—total $743. And under second count, for 19 head killed by the train, amounting to $475. Total amount of verdict, $1,218. Motion for new trial was made by defendant, which was overruled by the court, judgment was entered upon the verdict, and the defendant appealed to this court

*Clifford L. Jackson,* for appellant.

*Denison & Maxey,* for appellee.

TOWNSEND, J.   The counsel for appellant has filed 31 specifications of error in this case, but confines the brief of his argument to six different heads.   His first proposition is that appellee endeavored to recover on two different and distinct causes of action, one founded upon contract and the other upon tort.   It was well settled at common law that in many actions founded upon contract, and especially where the contract was implied and liability arose from tortious omissions, the liability had a twofold aspect, and action could be maintained ex contractu or ex delicto; and, since the abolition of forms of action, the rule is as firmly established in the reformed as it was in the common-law pleading.   Mr. Pomeroy in his work on Remedies and Remedial Rights (section 568) states the rule as follows:   "From certain acts or omissions of a party creating a liability to make compensation in damages, the law implies a promise to pay such compensation.   Whenever this is so, and the acts or omissions are at the same time tortious, the twofold aspect of the single liability at once follows, and the injured party may treat it as arising from the tort, and enforce it by an action setting forth the tortious acts or defaults, or may treat it as arising from an implied contract, and enforce it by an action setting forth the facts from which the promise is inferred by the law."   And in section 570;   "It is a familiar rule that the action against a common carrier for a loss or injury of goods may either be in tort for the violation of his general duty, or on the contract which he expressly or impliedly enters into."   In Railway Co. vs Laird, 164 U. S. 398, 17 Sup. Ct. 122, Justice White quotes with approval the following as illustrating the rule:   "The doctrine is very clearly expressed in Kelly vs Railway Co. [1895] 1 Q. B. 944, where the court of appeals hold that an action brought by a railway passenger against a company for personal injuries caused by the negligence of the servants of the company while he was traveling on their line was an ac-

tion founded upon tort. In reading the judgment of the court, A. L. Smith, L. J., said (page 947): "The distinction is this: If the cause of complaint be for an act of omission or nonfeasance which, without proof of a contract to do what has been left undone, would not give rise to any cause of action (because no duty apart from contract to do what is complained of exists), then the action is founded upon contract and not upon tort; if, on the other hand, the relation of the plaintiffs and the defendants be such that a duty arises from that relationship, irrespective of contract, to take due care, and the defendants are negligent, then the action is one of tort.'" Railway Co. vs Laird, 164 U. S. 398, 17 Sup. Ct. 122. We do not think, from a careful inspection of the complaints filed in the case at bar, that any contract was relied upon as the foundation of the action, and a recital is made merely showing the relation of the parties. The second proposition of appellant is that the court below erred in permitting one of the plaintiffs to testify to the declarations of Bickley, deceased. Bickley was the agent of the defendant at Eufaula, Ind. T. No authority is cited by appellant; and, Bickley not being the defendant, but simply the agent of defendant, declarations of his within the scope of his authority were properly admitted, and were binding upon the defendant.

The third proposition of appellant is as follows: "The lower court should have instructed the jury, as requested in the several different requests offered by the appellant, that the appellant did not receive the cattle in question for shipment, and could not be held to have taken possession of them, but that Grayson Bros. were in possession and in charge of the cattle when they escaped from the pens, and were mere licensees in placing their cattle in the pens." If the contention insisted upon by appellant in his third proposition is correct, then certainly no recovery could be had upon the first count of plaintiff's complaint, at

least.  But is this correct?  There is no dispute that the
pens were the property of the defendant;  that they were
constructed by the defendant, and used by shippers to load
cattle on defendant's cars, at the request and by the direc-
tion of the defendant.  The proof is undisputed that the
plaintiff's cattle were placed in the pens by the direction of
the defendant, and were there for the purpose of being ship-
ped to St. Louis.  Unless plaintiff had placed his cattle in
those pens, there was no other means furnished to put the
cattle on the cars or to ship them over defendant's railroad.
Now, can it be said that plaintiff has no remedy whatever
for the loss of 40 head of cattle, and other injuries directly
attributable to their escape, if such pens were improperly
constructed, or, by reason of having been too long in use,
were insecure?  We hardly think the authorities cited by
appellant, in regard to delivery to a railroad of inanimate
property, and the conditions surrounding that character of
property, are applicable, and it is a matter of regret that
the case from the Texas court of appeals is not more fully
reported:  "On February 10, 1885, the appellee, plaintiff be-
low, commenced his action against appellant in the county
court of Montague county, alleging in his petition that on
the 31st day of December, 1883, plaintiff contracted with de-
fendant for the shipment and safe transportation and de-
livery of 90 head of beef steers, from the town of Bowie,
Texas, to the National stock yards, in St. Louis, Missouri;
that in pursuance of said contract he delivered the 90 head
of cattle to defendant;  that said steers were placed within
the stock pens of defendant at Bowie, Texas, on said day;
that the defendant, on the day aforesaid, accepted said
steers for shipment, but at said time failed to deliver to
plaintiff a bill of lading therefor, but promised and agreed
with plaintiff to execute and deliver to him a bill of lading
on the day following;  that after said steers were delivered
to and accepted by defendant, and on the same day, viz, the

31st day of December, 1883, at 9 o'clock p. m., the defend-
ant, through the carelessness and negligence of its agents
and employees at Bowie, Texas, permitted 21 head of said
beef steers to escape from said stock pens aforesaid, and run
entirely off, and out of the reach of plaintiff; that defendant
had failed, refused, and neglected to keep their said stock
pens in repair, and that by reason of its refusal to keep the
same in repair, and its failure and refusal to properly guard
and protect the same, the said cattle were permitted to es-
cape therefrom.    He then alleges that two head, which he
could not find, were worth $64; that the cost of collecting
the 19 head recovered was $5 per head, $95; that the 19 head
depreciated in value $7 per head, $133,—making $292 in all.
He recovered a judgment for $200.50 and costs.    The evi-
dence fails to show that the cattle were delivered to and re-
ceived by appellant.    They were placed in appellant's stock
pen by permission of its agent, but, at the time they escaped
from the pen, had not been received for shipment, and ap-
pellant had in no way become responsible therefor.    There
is no evidence whatever that the cattle escaped because of
any negligence on the part of appellant, its agents, or em-
ployees, even had said cattle been received for shipment.
At the time of the escape of the cattle they were in the pos-
session and charge of appellee, and must have escaped, so
far the evidence shows, because of his own negligence."
Railway Co. vs Riley, 1 S. W. 446. The evidence in this
case is not reported, and, of course, what the proof was we
do not know.    If it is meant to say that there is no liability
on the part of the railway company under the allegations
stated in the petition, we cannot agree that such is the law.
The question is, in our opinion, one of negligence, and the
court below in the case at bar submitted the question fully
and fairly to the jury, as will appear from the following
quotations from the charge of the court:    "(1) The court in-
structs you, as to the claim set up by the plaintiff in the first

count or paragraph of the complaint, that if you find from the evidence that the Grayson Brothers, being desirous of shipping cattle over the road of the defendant railway company, applied to the agent of said company, and were directed by him to bring their cattle to the station, and to put such cattle in the stock pens or yards of said defendant until cars should be ready to load such cattle, and, in the pursuance of said direction of said agent, the Graysons did place such cattle in such pens or yards, using due care themselves, and you find from the evidence that the said pens or yards had been defectively constructed, or had not been maintained in a condition to make them reasonably safe for the purpose of yarding cattle until they could be loaded, and you find that the cattle of Graysons so yarded escaped from such stock yards or pens by reason of such defective construction or failure to maintain the pens or yards in a reasonably safe condition, then you would be warranted in finding their escape was due to the negligence of the defendant company, and your next inquiry will be as to whether any injury resulted to said cattle as the direct, natural, and proximate result of such negligence, and, if so, what the injury so resulting was. (2) You are instructed that, although you may be satisfied from the evidence that the escape from the pen was due to the negligence of the defendant company, as explained to you in the above instructions, and that injury to the cattle resulted, yet you would not be justified in finding a verdict for the plaintiff unless you find that such injury to the cattle was the direct, natural, and proximate effect of the negligence that caused the injury, and upon the question of what, if any, injury was such direct, natural, and proximate effect of the negligence of the defendant company, you are the judges, under the rules given you by the court as to what injuries fall within the line of direct, natural, or proximate effect. The direct, natural, or proximate effect of a given cause is that effect which persons of

ordinary judgment might reasonably conclude would follow such a cause as a result thereof, and under the first paragraph of this complaint, if the jury find negligence on the part of the defendant company, as hereinbefore directed, and find injury resulted, they are authorized to return a verdict for all such damages as from the evidence was the direct, natural, and proximate result of the escape of the cattle from the pens or yards by reason of the negligence in the construction or maintenance of such pens or yards. But if you should find from the evidence that any of plaintiff's assignor's cattle were injured or killed after they escaped from the stock yards of the defendant at Eufaula, by being struck and run over by a train of cars on defendant's railroad, and if you should find that such injury by the train of cars was the direct, natural, and proximate result of being so struck and run over by such train of cars, then you would not be authorized to find for the plaintiff, under the first count or paragraph in the complaint, any damages which were caused solely by such injury. (3) If the jury should find that there was negligence on the part of the defendant company in the construction or maintenance of the pens or yards, and that injury resulted, such injury as, under the rules of the law given you by the court, the plaintiff can recover for, and you believe that under those rules all the injury the plaintiff sues for was the direct, natural, and proximate cause of such negligence in regard to the pens or yards, and that the injury to a portion of plaintiff's assignor's cattle by being struck and run over by a train of cars on defendant's railroad was not the direct, natural, and proximate cause of any of the injury which the plaintiff sues for, then your verdict would be for all of such injury, and your finding be for such sum as you, from the evidence, believe the damage amounted to, and your verdict on the first count or paragraph would be for the plaintiff, and on the second count or paragraph for the defendant." "(6) If you believe

from the evidence that the defendant company had pens or yards at the station of Eufaula for the purpose of receiving into them cattle intended for shipment over its road, and, with the knowledge, consent, and direction of defendant's agent, the Graysons placed cattle in said pens or yards to be loaded and shipped over defendant's road, it was the duty of the defendant company to have and keep such pens or yards in safe condition for such purposes, and said company were required to use ordinary care to see that said pens or yards were and were kept in safe condition for use for the purposes intended." "(8) The court instructs the jury that the obligation of the defendant at the time in question, in the matter of the kind of stock pens it furnished to those who proposed to ship cattle over its line of railway, was to use the care that an ordinarily reasonable minded man would have used in the providing of pens in which to confine his own cattle for a similar purpose." The foregoing charges especially applied to the damages under the first count of the complaint, and the following quotations applied more especially to the damages under the second count of the complaint: "(4) The court instructs you, as to the claim set up in the second count of the complaint, that it is the duty of the employees of the railway company, in operating its trains upon its line of railway, to exercise ordinary care and watchfulness, and if the jury believe that the cattle of the Graysons, without fault on their part, got upon the track of the railway company, and the employees engaged in running a train of cars of the company over its track did see such cattle in time to have avoided running upon them and injuring them, or by the exercise of ordinary care could have discovered them in time to avoid the injury to them, and did run into them and injure them, then you will be authorized to find the negligence alleged in the second paragraph, and authorized to find for the plaintiff such damages as you find from the evidence followed from the injuries which were the

direct, natural, or proximate effect of the negligent running of the train. (5) If the jury should find, under the instructions given them, that there was negligence in regard to the pens or yards, and injury resulted for which the plaintiff is entitled to recover, and the jury do not believe all the injury alleged in the first paragraph was the direct, natural, or proximate effect of such negligence, they would only be authorized to assess such damages upon that paragraph as they find for such injuries as were the direct, natural, or proximate effect of such negligence, and if they find, under the instructions given, that all the injuries complained of were attributable to that cause, and they do find that there was negligence on the part of the company in regard to operating its train, and injury resulted for which, under the rules given you, the plaintiff is entitled to recover damages, you will assess such damages upon the second paragraph as the evidence satisfies you flowed from the direct, natural proximate injuries from the negligence in operating such train." "(7) The court instructs the jury that, under all the evidence, the defendant did not occupy the relation of a common carrier with reference to any of the stock of Grayson Brothers which it is alleged were placed in the pens at the station at Eufaula at the time in question" "(9) The court instructs the jury that the only obligation that was upon the defendant or any of its employees to discover the cattle of the plaintiff's assignors upon the track of defendant was to use reasonable care to discover said cattle, and a reasonable degree of care to prevent injury to them after they were discovered." "(12) The court instructs the jury that, even though they believe from the evidence in this case that the animals mentioned in plaintiff's complaint were killed or injured by the engine of defendant, and through the negligence of defendant's servants and employees, yet if you further believe from the evidence in this case that the Grayson Brothers contributed to the killing of such animals by

their negligence in any manner, then you will find for the defendant." "(15) The court instructs the jury that the plaintiff cannot recover under the second paragraph of the complaint in this case for any damages other than the killing of the nineteen head of cattle claimed to have been killed by the locomotive engine, if they are entitled to recover at all." In the foregoing charges of the court, we think the law was correctly stated to the jury, and the jury by their verdict found for the appellee. On a motion for new trial, the court below, that tried the case, saw the witnesses, and was familiar with their appearance and conduct before the jury, refused to disturb the verdict. The view we take of the law of the case, as heretofore stated, disposes of the fourth, fifth, and sixth propositions argued by appellant in his brief, and it is unnecessary to refer to them further. We shall not disturb the verdict of the jury or the judgment of the court. Therefore the judgment below is affirmed.

CLAYTON, J., concurs.