MISSOURI, K. & T. RY. CO. et al. v. BYRNE.

(Circuit Court of Appeals, Eighth Circuit. February 12, 1900.)

No. 1,219.

1. PLEADING—JOINDER OF CAUSES OF ACTION.
   A cause of action against a railroad company to recover damages on account of the defendant's negligence in the construction and maintenance of cattle yards at a shipping station, by reason of which certain cattle of plaintiff, placed in the yards while awaiting shipment, escaped, and were lost and injured, may properly be joined with a separate count to recover for the negligent killing of some of the same cattle by an engine on defendant's road.

2. EVIDENCE—TRANSACTION WITH AGENT SINCE DECEASED.
   There is no statute or rule of law in force in the Indian Territory which makes a party to a contract or transaction incompetent to testify to it because the agent of the other party, with whom the contract was made or the transaction had, is dead.

3. CARRIERS OF LIVE STOCK—DEFECTIVE YARDS—MEASURE OF LIABILITY.
   A railroad company which constructs yards by the side of its track to facilitate the loading and unloading of stock is not responsible as a common carrier for stock placed in such yards by the owner to await shipment, but is bound only to the exercise of ordinary care in the construction and maintenance of its yards.

4. NEGLIGENCE—ACTIONS—QUESTIONS FOR JURY.
    What was the proximate cause of an injury is ordinarily a question for
    the jury, and when it has been determined by them their finding is con-
    clusive, unless it can be'said that all reasonable men must draw a differ-
    ent conclusion from the facts of the case.

    Caldwell, Circuit Judge, dissenting.

In Error to the United States Court of Appeals in the Indian Ter-
ritory.

Clifford L. Jackson, for plaintiffs in error.

N. B. Maxey (G. B. Denison, on the brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge. 'On December 20, 1892, the assignors
of Patrick J. Byrne, the defendant in error, were notified by the
agent of the Missouri, Kansas & Texas Railway Company that it
would furnish cars to ship their cattle the next morning, and that
he should "bring his cattle in." Thereupon he drove them in, and
put them in pens, at the station of Eufaula, which the railway com-
pany had constructed and maintained to facilitate the loading, un-
loading, and shipment of cattle. During the night the cattle broke
down two posts and a corresponding portion of the fence, and 150
of them escaped from one of the pens. Nineteen of them were killed
on or near the railroad track by an engine which ran into them,
94 were recovered, and possibly 37 were lost. The defendant in
error sought to recover for the cattle lost and killed, for the injury
to those recovered, and for the expense of recovering them.

In the complaint upon which the action was tried there were two
counts, each for the recovery of the same items of damages, which
amounted in the aggregate to $1,802.50. The first count charged
that these damages were inflicted by the negligence of the com-
pany in constructing and repairing its cattle pens, and the second
charged that they were inflicted by the negligence of the company
in running its engine upon the cattle after they had escaped from
the pens, and while its engineer might have seen them upon the
track, and might have prevented the collision. The court thereupon
charged the jury, in effect, that, if they found that the railway com-
pany was negligent in the construction or maintenance of its cattle
pens, they might return a verdict against it for such loss of the de-
fendant in error as was the direct, natural, and proximate effect
of that negligence; that the direct, natural, or proximate effect of
a given cause was that effect which persons of ordinary judgment
might reasonably conclude would follow such a cause as a result
thereof; that, if the killing of the 19 cattle on the railroad tracks
was the direct, natural, and proximate result of the negligence
in maintaining the cattle pens, they should return a verdict for the
cattle so killed, under the first count of the complaint; but if that
killing was not the direct, natural, and proximate effect of that
negligence, but was caused solely by their collision with the en-
gine, then they could not return a verdict for the dead cattle under
the first count of the complaint, but might do so under the second

count, if they found that the railway company failed to exercise ordinary care in running the engine and train which struck them. The jury returned a verdict under the first count of the complaint for $743, and under the second count "for 19 cattle killed by train, at $25 per head, amounting to $475." In other words, the jury found that the killing of the 19 cattle by the engine on the railroad tracks was not the natural or probable effect of a failure to exercise ordinary care in the construction of the cattle pens, but that its proximate cause was the collision of the engine with them.

There are numerous assignments of error. Some of them are that the court refused at the close of the trial to instruct the jury to return a verdict for the plaintiff in error upon the first count of the complaint; that it refused to instruct them to return a verdict in favor of the railroad company upon the second count of the complaint; that it denied the motion of the railway company to compel the defendant in error to elect upon which count he would proceed to trial; that it permitted Grayson, who had the transaction with the agent of the company, to testify to the conversation between them which induced him to put the cattle in the pens, although the agent was dead; and that the court refused to instruct the jury that the railway company did not receive the cattle for shipment, or take possession or assume charge of them by permitting them to be placed in the pens.

There was no inconsistency between the causes of action set forth in the two counts of the complaint, and the motion to compel an election was properly denied. Both causes were based on the negligence of the company, and none of the facts essential to the maintenance of either cause were inconsistent with those that were indispensable to the maintenance of the other. Great Western Coal Co. v. Chicago G. W. Ry. Co. (C. C. A.) 98 Fed. 274.

There is no statute or rule of law in force in the Indian Territory which makes a party to a contract or a transaction incompetent to testify to it because the agent of the principal with whom he made or had it is dead, and there was no error in the admission of the testimony of Grayson. Rev. St. § 858; Mansf. Dig. Ark. § 2857.

It is undoubtedly a sound legal proposition that a railway company which permits stock to be placed in the pens which it has prepared by the side of its tracks to facilitate loading and unloading it does not thereby receive it for shipment, or take possession or assume charge of it as a common carrier or keeper. The limit of its liability is for the exercise of ordinary care in the construction and maintenance of its pens. But we hesitate to say that this proposition was not substantially given to the jury, although not in the words of the request of the company, and perhaps not as clearly and incisively as it might have been.

There is, however, one assignment of error which must be sustained, and which renders a more extended notice of others unnecessary. It is that the court refused to instruct the jury that they must return a verdict for the railway company upon the second cause of action. The sole basis of that cause of action was the negligence of the engineer in running his train upon and killing the

19 cattle on the railway tracks, and the jury returned a verdict against the company for $475 on this account. A careful perusal of the entire record fails to disclose any evidence of negligence or dereliction of duty in the operation of the train which killed these cattle. They were bunched on the railroad track some distance from any station, in the night, when a train came along and struck them. The proof is plenary and undisputed that the engineer in charge of the train was watchful, active, and careful, and that after he discovered the cattle it was impossible for him to avoid a collision. In this state of the case the court should have instructed the jury that there could be no recovery on this cause of action. It is contended that this error is not fatal, because the killing of the cattle may be attributed to the negligence of the company in the construction and maintenance of its pens, which permitted the escape and the killing. It is said that there would have been no killing if there had been no escape, and no escape if there had been no negligence in maintaining the pens. But this contention ignores the real question in the case, and also the pregnant fact that the verdict of a jury has properly answered that question adversely to the major premise of the argument. The question was whether or not the negligence of the company in maintaining its cattle pens was the proximate cause of the killing of the 19 cattle on the railroad track by the engine. The mere fact that they would not have been killed if they had not escaped does not answer this question, for they would not have been killed although they did escape if they had not bunched themselves on the railroad track, or if the train had not come along and struck them at the exact moment when they were on the track and in its way. Post hoc is not necessarily propter hoc. The question was whether the killing by the engine was the natural and probable result of the negligence in the maintenance of the pens, not whether it was subsequent to that negligence, nor whether it would not have occurred in the absence of that negligence. An injury that is the natural and probable consequence of an act of negligence is actionable because that act is its proximate cause, but an injury that could not have been foreseen or reasonably anticipated as the probable result of an act of negligence is not actionable, nor is an injury that is not the natural consequence of the negligence complained of, and that would not have resulted from it, but for the interposition of some new, independent cause that could not have been anticipated. The question, then, was whether the bunching of the 19 cattle on the railroad track in the night, and their death from collision with an engine and train of cars, was the natural and probable consequence of the failure of the company to use ordinary care to maintain its cattle pens. It was whether that bunching and killing could have been foreseen or reasonably anticipated as the natural and probable effect of negligence in maintaining the pens. A natural consequence of an act is one which ordinarily follows from it,—the result which may be reasonably anticipated from it. Was the bunching and killing of the cattle on the railroad a result which ordinarily follows from their escape upon unfenced land through which a railroad extends? A probable consequence is one which is more likely to follow its sup-

posed cause than it is to fail to follow. Was it more probable that the result of the escape of these cattle would be their bunching and killing on the railroad than it was that they would wander off on the prairie, and be recovered again, as 94 of them were? To ask these questions seems to answer them, and the jury gave the answers which they seem to demand. They answered them in the negative. They found that the killing of these 19 cattle was not the natural and probable consequence of the failure to use ordinary care to maintain the pens, but that it was the result of an independent intervening cause, —the bunching of the cattle on the railroad, and the collision of the engine with them. Unless this court reverses, ignores, or disregards that finding, the verdict for the cattle killed cannot be sustained on the ground that the killing was the effect of negligence in maintaining the pens, because the jury have found that this negligence was not the proximate cause of the killing or of the loss which resulted therefrom. But this finding may not be disregarded unless all reasonable men of unprejudiced minds would draw the opposite conclusion from the facts of this case. It is only in such a case that the question of proximate cause may be withdrawn from the jury. In every other case it is their province to determine it, and their finding upon it is conclusive. Mr. Justice Strong, in Railway Co. v. Kellogg, 94 U. S. 474, 476, 24 L. Ed. 259, said:

"The true rule is that what is the proximate cause of an injury is ordinarily a question for the jury. It is not a question of science or of legal knowledge. * * * In the nature of things, there is in every transaction a succession of events more or less dependent upon those preceding, and it is the province of a jury to look at this succession of events or facts, and ascertain whether they are naturally and probably connected with each other by a continuous sequence, or are dissevered by new and independent agencies, and this must be determined in view of the circumstances existing at the time."

Insurance Co. v. Robbins' Adm'r, 27 U. S. App. 547, 552, 553, 12 C. C. A. 544, 547, 65 Fed. 178–181, 27 L. R. A. 629; Railway Co. v. Callaghan, 12 U. S. App. 541, 547, 6 C. C. A. 205, 208, 56 Fed. 988, 991; Railroad Co. v. Price, 97 Fed. 423, 38 C. C. A. 239.

We are far from being convinced that all reasonable men of unprejudiced minds would disagree with the finding of the jury upon this question of proximate cause. Indeed, it seems to us that many reasonable men would agree with the jury that the bunching of these 19 cattle on the railroad track, and their killing by the engine and train, was neither the natural nor probable consequence of the negligence in maintaining the cattle pens; that such a result could not have been foreseen or reasonably anticipated from that negligence, or from the escape of the cattle from the pens; and that it was not the natural or probable consequence of that negligence or escape, but was the effect of independent intervening causes,—the bunching of the cattle on the railroad track, and the coming of the train in the night at the exact moment when they happened to be in its way,—causes which could not have been foreseen or anticipated, but which unexpectedly intervened, turned aside the natural sequence of events, and produced an unnatural and improbable result. Railway Co. v. Elliott, 12 U. S. App. 381, 386, 5 C. C. A. 347, 349, 55 Fed. 949, 20 L. R. A. 582.

Since the jury properly found, upon substantial evidence, that the negligence of the company in constructing and maintaining the pens was not the proximate cause of the loss of the cattle killed, but that the proximate cause of that loss was negligence in operating the engine, and since there was no evidence of any negligence in the operation of the engine, the verdict cannot be sustained. The rulings and proceedings in this case prior to the trial are not the subject of any assignment of errors, and hence we do not notice them. The judgments of the United States court of appeals for the Indian Territory and of the United States court for the Indian Territory are reversed, and the case is remanded to the latter court, with instructions to grant a new trial.

CALDWELL, Circuit Judge (dissenting). It is stated in the opinion of the court that "in the complaint upon which the action was tried there were two counts. * * * The first count charged that these damages were inflicted by the negligence of the company in constructing and repairing its cattle pens, and the second charged that they were inflicted by the negligence of the company in running its engine upon the cattle after they had escaped from the pens." It is necessarily implied in this statement that the plaintiff, by his own volition, stated his cause of action in two counts. But the record in the case discloses that he did nothing of the kind. More than seven years ago the plaintiff's assignor delivered to the defendant railroad company 150 head of cattle for shipment over its road. The company placed the cattle in one of its cattle pens for shipment, from which they escaped during the night by reason of the fence around the pen being old, rotten, and defective. It is the view of the majority of the court that the company was negligent in putting the cattle into a pen so defectively fenced, and that it is liable for the cattle that escaped from the pen, and which, by reason of such escape, were lost to the plaintiff.

The original complaint counted on the foregoing facts, and alleged that when near the pen from which the cattle escaped, and immediately after their escape, "a locomotive engine and train of cars ran into, against, and over a large number of the said cattle, and killed of them nineteen head, of the value of $475, and scattered and dispersed others of said cattle, so that forty head thereof have been totally lost to the plaintiff, which were of the value of $1,000." This complaint stated but a single cause of action, namely, the loss of the 40 head of cattle by reason of their escape from a defective stock pen. The statement was incidentally made that, of the 40 head lost, 19 head were run over by a locomotive engine while fleeing from the pen and in close proximity to it, and the remainder of the 40 head continued their flight out onto the plains, and were lost.

Obviously, an allegation that the 40 head of cattle were lost to the plaintiff by reason of their escape from the shipping pen would have constituted a good complaint. But seizing upon the incidental and wholly immaterial statement of what happened to the cattle after their escape from the shipping pen, which prevented the plaintiff from recovering them, the defendant's attorney flooded the court with

demurrers, and motions for a more specific statement of the cause of action, and for a separate statement of the causes of action, and with numerous other frivolous and nameless motions, until the court, to obtain surcease from this flood of trash, required the plaintiff to divide his single cause of action into two, one paragraph counting on the cattle that were killed by the locomotive engine in their flight from the pen, and the second counting on the cattle that were not killed by the locomotive engine, but continued their flight onto the plains and were never recovered. After thus coercing the plaintiff to state in a separate paragraph the number of cattle killed by the locomotive engine as they fled from the pen, the defendant then insisted the plaintiff must show these cattle were killed through the negligent management of its locomotive engine, and that as to these cattle the plaintiff must rest alone upon that claim of negligence; thus ignoring the plain and obvious fact that it was the defendant's negligence in allowing the cattle to escape from the pen and get on the railroad track that was the proximate cause of the loss, and that their death on the railroad track was due to this proximate cause, and that it was therefore wholly immaterial to the plaintiff's right of recovery how the defendant's engine that ran over the cattle after their escape from the pen was managed. After inducing the court erroneously to compel the plaintiff against his protest to split his single cause of action into two, another shower of frivolous demurrers and motions was rained down upon the court; among them, a motion that the plaintiff be compelled to elect upon which of the two causes of action he would stand. Against this extremely erroneous ruling of the trial court the plaintiff was remediless. He could not take an appeal from the order requiring him to change the statement of his cause of action, because it was not a final judgment. He was therefore compelled to try the case upon the statement of his cause of action framed, in effect, by the defendant to defeat the ends of justice. The defendant now seeks to saddle upon the plaintiff the consequences of an error procured and brought about by its own action. By the quibbling methods mentioned, the proper characterization of which would justify the use of very strong adjectives, the defendant succeeded in delaying the trial of the case for nearly four years. When the case was finally tried, the jury was required to return two verdicts,—one for the cattle killed by the locomotive engine, and one for the cattle that continued their flight onto the plains and were lost. The jury returned verdicts as follows: "For thirty-seven head of cattle never recovered, but not killed by the train, at $12.50 per head, amounting to $462.50;" "for nineteen cattle killed by train, at $25.00 per head, amounting to $475." In all common sense and reason, there never was but one cause of action in this case; that was for the cattle lost, no matter how, by reason of their escape from the defective cattle pen. The division of this single cause of action into two was brought about by the persistent efforts of the defendant, and is therefore an error from which it can reap no benefit. It invited the error against the protest of the plaintiff, and no party can take advantage of an error he himself invites and procures to be committed. New York El. R. Co. v. Fifth Nat. Bank, 135 U. S. 432, 441, 10

Sup. Ct. 743, 34 L. Ed. 231, and cases there cited; Railway Co. v. Harris, 27 U. S. App. 450, 457, 12 C. C. A. 598, 63 Fed. 800, and cases there cited.

It must be conceded that, if none of the cattle that escaped from the pen had been killed by the defendant's locomotive engine, it would have been liable for all that were lost by reason of such escape,—all that were lost as the proximate cause of the escape from the pen. Upon what principle, then, can the company be relieved from this liability by showing that in their flight from the pen, and immediately after their escape therefrom, and by reason thereof, the cattle ran upon the company's track, and were killed by one of its locomotive engines, without any negligence in the management of the locomotive? The plaintiff brought his action properly, namely, for the loss of the cattle resulting from their escape from the cattle pen through the negligence of the defendant. The manner of their death, or loss after their escape from the pen, so be it that it was a result of that negligent escape, is wholly immaterial. Some may have run upon the railroad track, and been killed by a moving locomotive; some may have run into a wire fence, and been killed; and some may have continued their flight upon the plains, and never been recovered. But in each case their loss to the plaintiff was the result of the defective pen; that was the proximate cause of the loss of all the cattle that were lost. The first complaint which is in the record counted on this state of the case. The escape of the cattle from the pen was so clearly and obviously the proximate cause of their loss to the plaintiff that the question should not have been submitted to the jury. The verdict of the jury expressed a just and the proper result, and was clearly the only verdict possible, if the case had been tried, as it should have been, on the plaintiff's complaint, instead of on one framed for him by the defendant. The question of the sufficiency of the evidence to support the finding as to the number of cattle that fled out upon the plains and were lost ought to be regarded as settled after the jury that tried the case, the trial judge, and an appellate court of three judges have concurred in its sufficiency. It is a well-settled rule, essential to a fair and just administration of justice, that where, from a view of the whole record, it is apparent that justice has been done, an appellate court will not reverse the judgment for mere formal defects. Lancaster v. Collins, 115 U. S. 222, 227, 6 Sup. Ct. 33, 29 L. Ed. 373, and cases there cited. "When it is manifest that the judgment is right on the whole record, the judgment will be affirmed, notwithstanding error in the proceedings." Vaughan v. Daniels, 98 Mo. 230, 11 S. W. 573; Fairbanks v. Long, 91 Mo. 628, 4 S. W. 499. Much more is this the rule where, as in this case, the error in the proceedings complained of is the result of the action of the party complaining of those proceedings. "When the judgment is for the right party it will not be reversed for any error of law attributable to the complaining party's action." Fairbanks v. Long, 91 Mo. 628, 4 S. W. 499; Noble v. Blount, 77 Mo. 239; Holmes v. Braidwood, 82 Mo. 617. "A party shall not tread back, and trip up the heels of the plaintiff on a defect which he himself invited." Holmes v. Braidwood, 82 Mo. 617. "A party will not be heard to complain of

an error adopted by the trial court at his request." Price v. Town of Breckenridge, 92 Mo. 387, 5 S. W. 22.

The only question of law in the case from the beginning to the end, worthy of the attention of the court, was whether the company was bound to provide a reasonably safe shipping pen for the cattle, and was liable for the damage resulting from the neglect of that duty. By means of the groundless quibbles mentioned, the defendant has protracted this simple case for seven years, and the plaintiff is now told at the end of that time that he can have nothing for the cattle that escaped and were killed by the locomotive engine, as they were running from the pen, because that was not negligently managed. To that he naturally returns the answer: "I sued for the loss of my cattle resulting from their escape from the shipping pen by reason of the defendant's negligence in not maintaining a reasonably safe and sufficient fence around the pen, and I neither know nor care whether the defendant's locomotive engine which killed some of them as they fled from the pen was well or ill managed. Their escape from the pen was the proximate cause of their loss to me, and it is for that I sued. The statement in the pleadings to the contrary of this was compelled by an order of the court made on the defendant's motion, and against my protest, and for that reason cannot operate to my prejudice." This plea is not answered in the majority opinion, and cannot be answered. The result reached by the court is not right or just. It rewards a species of practice intended to delay and defeat the ends of justice. It is, in a word, a travesty on justice. Moreover, under the Arkansas Code of Practice which is in force in the Indian Territory, it is well settled that, if the proofs warrant the verdict, the judgment will not be set aside or reversed, but the complaint will be treated and considered as amended to conform to the proofs. In Davis v. Goodman, 62 Ark. 262, 35 S. W. 231, Chief Justice Bunn, delivering the unanimous judgment of the court, said: "But, according to a uniform holding of this court, the trial court's findings and judgment will not be reversed, when they are in conformity to the evidence in the case, notwithstanding the pleadings fall short of the facts in evidence; for in such case the pleadings will be considered as amended to suit the facts." And see, to the same effect, Keener v. Baker, 35 C. C. A. 350, 93 Fed. 377; Railway Co. v. Harper, 44 Ark. 527; Railway Co. v. Triplett, 54 Ark. 289, 305, 15 S. W. 831, 16 S. W. 266. But here there is a perfectly good complaint in the record to which the evidence can be referred. But, clearly, the reversal of the judgment of the lower court should be accompanied by an instruction to the trial court to permit the plaintiff, if so advised, to state his cause of action in a single count based on the loss of the cattle by reason of their escape from the defectively fenced cattle pen, as was done in the original complaint, and requiring the defendant to plead to the merits of such complaint, for, judging from the disclosures of the record before us, in no other way will the merits of the case be reached during the lifetime of any of the natural persons connected with it. The railroad company, being exempt from the natural law of mortality, will alone see the end of the case. The judgment of the United States court of appeals in the Indian Territory (49 S. W. 41) should be affirmed.