Davis, Respondent, vs. Chicago, Milwaukee & St. Paul Railway Company, Appellant.

*March 31 — June 19, 1896.*

*Railroads: Carriers: Injury to passenger: Negligence: Contract exempting from liability: Public policy: Interstate commerce:* Lex loci contractus: *Proximate cause: Special verdict: Instructions to jury: Improper argument.*

1. A stipulation in a contract for the carriage of a passenger exempting the carrier from liability for injuries caused by its negligence or the negligence of its agents or employees is void as against public policy.

2. A contract made in one state for the carriage of a passenger from that state into another and back again is governed, as to its interpretation and validity, by the law of the state in which it was made, where it does not appear that the parties intended to be bound by the law of any other state.

3. The validity of a contract for interstate transportation is to be determined in accordance with the principles of the common law, in the absence of any legislation by Congress to the contrary.

Davis vs. Chicago, Milwaukee & St. Paul R. Co.

4. In an action for personal injuries sustained by a passenger by rea-
son of the derailment of a train, where plaintiff's evidence tended
to show that the accident was caused by defects in the track and
roadbed due to defendant's negligence, and defendant's evidence
tended to show that it was caused by an obstruction placed on
the track by third persons, findings of a special verdict that the
ties of the track were not in good condition and that the defend-
ant was guilty of negligence which occasioned the injury to the
plaintiff are insufficient to show that defendant's negligence was
the proximate cause of the injury.
5. Defendant's negligence could not in such a case be considered the
proximate cause of the injury, so as to warrant a recovery, unless,
under all the circumstances, the accident might reasonably have
been foreseen by a competent and experienced man accustomed
to the structure, inspection, repair, and management of the road-
bed and track of a railway, while in the exercise of extraordinary
care and prudence; and the jury should have been so instructed.
6. Where facts had been testified to by witnesses of apparent intelli-
gence and credibility who were in no way impeached or contra-
dicted, but the opposing counsel in his argument to the jury
asserted that such facts did not exist, the court should, on re-
quest, have instructed the jury that those facts were established
and that they were not at liberty to find to the contrary.

APPEAL from a judgment of the circuit court for Dane
county: R. G. SIEBECKER, Circuit Judge. *Reversed.*

This was an action to recover damages for a personal in-
jury received by the plaintiff at or near Coon Rapids, Iowa,
June 16, 1894, while he was traveling on the passenger
train of the defendant company, by reason of the derail-
ment of the cars caused by the negligence of the company,
in that its track, railroad bridge, roadbed, ties, frog, and ap-
pliances, to the distance of 100 feet over and to the west-
ward of Coon river, about half a mile east of the village of
Coon Rapids, were out of repair, defective, and unsafe, espe-
cially at the place where the train was derailed and wrecked.
Various defects were specifically alleged, among others that
the frog at the bridge was old, worn, and defectively con-
structed; that the cross-ties in the roadbed were old and

rotten, so that they did not hold the spikes driven into them to keep the rails in place, and so that there was not sufficient support to the rails; that the rails were too light, and old and worn; that the roadbed was rough and uneven, and was not sufficient support to the rails and ties to form a safe track for trains; that the bridge across the river was constructed of insufficient materials and built on insufficient piling; that the construction, framework, and foundation of the bridge were not of sufficient strength to support the weight of the train, so that the bridge and trestlework approaching it gave way and fell, throwing the train and car in which the plaintiff was riding down the embankment and into the river. And it was alleged that such defective condition of the roadbed, bridge, and track had existed for a long time prior to the accident, to the knowledge of the defendant.

The defendant, in its answer, admitted the derailment of the train and that the plaintiff had received some injuries in consequence, but put in issue the extent of such injuries, and denied that the plaintiff's injuries were caused by any fault or negligence on its part or on the part of any of its agents, servants, etc. It was set up that the plaintiff was being carried by the defendant under a contract entered into at Richland Center, Wisconsin, for the transportation of three cars of cattle from said Richland Center to Council Bluffs station, Iowa, and a return ticket, and under the terms and conditions of which the plaintiff was passed and rode on the train in which said three cars were transported, as the person in charge of the stock; that at Council Bluffs, pursuant to the terms of the contract, the plaintiff applied for transportation of himself, in return from that place to said Richland Center, and received, pursuant to such contract, a drover's return ticket between said points, subject to the condition that, in accepting the same, the plaintiff agreed to "assume all risks of accidents," and that the defendant

" shall not be liable under any circumstances, whether of negligence by their agents or otherwise, for any injury to me [him], or for any loss or damage to my [his] property; " and that, while traveling on such return ticket, the derailment of the cars and injury to the plaintiff occurred.

Evidence was given at the trial showing that the plaintiff, at the time of the accident, was being carried on the defendant's train under such return drover's ticket, containing a stipulation as above stated. The evidence was that the train in question, the fast vestibuled train going east to Chicago, consisting of an engine, tender, mail car, a combination baggage and express car, smoking car, chair car, and three sleeping cars, attached in the order named, was derailed and ran off the track and over the embankment, with the exception of the two rear sleepers, as it approached the bridge across Coon river, about half a mile east of Coon Rapids station, about 10 o'clock at night; and by reason of this the plaintiff, who was riding in the smoking car, received the injury of which he complained. The approach to the bridge from the depot west of it is over a trestle 148 feet long. Three switch tracks enter the main track between the depot and bridge, two from the south, and one from the north, numbered from the bridge west, namely: No. 1, " south gravel track," commences at the bridge truss, and runs southwest; No. 2, called " high track," commences twenty-nine feet west of the west end of the trestle, and runs in a southwesterly direction; and No. 3, called " north gravel track," commences 138 feet west of the west end of the trestle, and runs in a northwesterly direction. There was a guard rail and frog eighty feet west of the switch stand, for this track. The bridge was a Howe truss bridge, 138 feet long, and thirty-seven feet above the water, and the east end of it was about 500 feet east of said frog and guard rail. The track gave way, and the bridge fell while the train was pass-

ing over it, and part of the train was thus thrown into the river, and part of it down the embankment, or over the side of the trestle, to the north side, the rear sleeper and the hind truck of the second sleeper remaining on the track.

There was a conflict of evidence as to the cause of the wreck, the plaintiff claiming that as the track gave way and the bridge fell, derailing the train, the presumption was that the track and bridge were insufficient, and that such insufficiency was due to the negligence of the defendant; and he produced evidence tending to show that the track was insufficient, and that the derailment was caused thereby; that the north rail. of the main track was torn from the track immediately west of the trestle, causing some of the cars to roll over the north side of the embankment and trestle, and precipitating some of them against the corner of the bridge while the train was in motion. Considerable evidence was directed to the method of construction of the roadbed, which had been in use eleven years, and its condition at the place of the wreck. There was evidence tending to show that there were rotten ties in the track, mostly near the trestlework, or within sixty or seventy feet of it; that there were eight or nine rotten ties all along there. One witness said he noticed one or two rotten ties,— somewhat rotten; another, that he saw eight or nine near the west end of the trestle. The south rail was not disturbed until the trestlework was reached. Another witness testified that he saw five or six rotten ties in all, and one was so rotten that he was able to run his cane into it,— this was the only one that was rotten or bad; another, that several ties were apparently rotted where the spikes were torn out, perhaps ten or twelve; another, that he had been frequently at the track during the spring before the accident, and in the afternoon of the day of the accident he observed three or four rotten ties. He was the only one who testified to see-

Davis vs. Chicago, Milwaukee & St. Paul R. Co.

ing any rotten ties before the accident. Other witnesses testified to having noticed rotten ties, in about the numbers already stated, after the accident.

The defendant contended that the wreck was caused by an oak tie placed by some discharged laborers at the west end of the guard rail, between it and the rail, between the time the east-bound freight train that preceded this passenger train about forty minutes ran over the main track, and the coming of the passenger train. This tie was found under the rear sleeper, between the main rail and guard rail; and it had been broken and slivered up considerably, the pieces matching and fitting to the tie from which they so appeared to have been broken. Evidence was given of numerous facts and circumstances to show that the train had been derailed by the tie so placed between the guard rail and main rail, as that the west end of the guard rail had been sprung or shoved to the north, the guard rail braces broken, and the main rail somewhat sprung to the south. Other evidences of the condition and marks on the track and ties were relied on. From about seventy-five feet of the west end of the trestle, eastward, the track was torn up, rails torn loose and thrown down the embankment, ties torn out, split, and broken, the embankment torn up, the crossties or timbers of the trestle leading to the Howe truss disturbed and broken, and the truss broken and in the bed of the river. Evidence was given to rebut the case of the plaintiff in respect to rotten ties, and to show that the track was properly constructed and in good condition; that, the fall before the wreck, the track from the trestle west had been carefully inspected, and all unsound ties removed and replaced with new oak ties. The road master, the foreman, the two section foremen, and the superintendent testified, in substance, that the track was in good condition before the wreck, and to having been over it almost daily, and some of them oftener. Superintendent Goodnow testified to hav-

ing made a careful inspection twenty-four days before the wreck, on foot, and that "the track was in good shape,—in good condition. The ties were sound and well ballasted,— well filled with ballast. The rails were in good surface, and the drainage good." The foreman Crabbs made an inspection on foot on the day of the accident, and testified that the ties and everything else were in good condition. The evidence in respect to the alleged claims of the parties as to the cause and circumstances of the wreck was very elaborate, covering nearly 300 printed pages.

The court instructed the jury that the testimony established beyond dispute that the engine and cars were in good condition, properly equipped, and the engineer and conductor were competent men.

Evidence was given to the effect that three laborers were discharged from the gravel pit three days before, and that the leader of them made threats that he would ditch the train; that, if the company did not pay him and give him a pass to Chicago, they would catch h—l. About forty-five minutes before the wreck, O. B. Triplett, hotel keeper at the station, passed through the bridge and over the trestle towards the station, and, when not far along the track, he saw an object on the track ahead, and, approaching within about fifty feet of it, he saw it was four men, and they started down the side of the grade and went behind a clump of cottonwood bushes; and, as he went on, he looked back, and they still remained behind these bushes and were about seventy feet west of the guard rail mentioned.

There was a special verdict, finding: (1) The engine was not, nor any part of it, off the track west of the trestle. (2) The roadbed from the west end of the trestle to switch stand No. 3, on the north side of the main track, was of a proper and sufficient width. (3) The ties of the track from the west end of the trestle to switch stand No. 3 were not in good condition at the time of the wreck. (4) The rails,

switches, and frogs from the west end of the trestle to the guard rail of switch No. 3 were in good condition at the time of the accident. (5) The train was running, at the time it approached the place of the accident, at about the usual rate of speed. (6) The engineer was not guilty of any negligence which caused the car wherein plaintiff was riding at the time of the accident to leave the track and to fall over the embankment. (7) The defendant company was guilty of negligence which occasioned the injury to the plaintiff. (8) If the plaintiff was entitled to judgment, his damages were assessed at $4,000.

The defendant moved for a new trial, on the ground that the verdict was contrary to the law and to the evidence; that the answers 1, 3, and 7 were contrary to and unsupported by evidence; that the court erred in refusing to direct a verdict for the defendant; and that the court erred in its charge to the jury. The motion was denied, and the plaintiff had judgment on the verdict, from which the defendant appealed.

*Geo. W. Bird,* attorney, and *Burton Hanson,* of counsel, for the appellant, argued, among other things, that the contract in this case related wholly to interstate commerce, and resort cannot be had to state statutes or state decisions to determine whether it was valid or invalid. All laws of the state, whether statute or common law, which attempt to regulate or interfere with interstate commerce are void. *Wabash, St. L. & P. R. Co. v. Illinois,* 118 U. S. 557; *Hall v. De Cuir,* 95 id. 485; *La Farier v. G. T. R. Co.* 52 Am. & Eng. R. Cas. 226; *Missouri P. R. Co. v. Sherwood,* 55 id. 478; *State Freight Tax,* 15 Wall. 232; *Welton v. Missouri,* 91 U. S. 275; *Brown v. Houston,* 114 id. 622; *Grand Trunk Ticket Case,* 52 Am. & Eng. R. Cas. 228. There is no common law of the United States. *Bucher v. Cheshire R. Co.* 125 U. S. 583; *Swift v. P. & R. R. Co.* 64 Fed. Rep. 59; *Gatton v. C., R. I. & P. R. Co.* 63 N. W. Rep. 589. When

counsel in the closing argument to the jury insisted that there was no proof that threats had been made and that no persons had been seen near the place of the accident just prior thereto, the duty then devolved upon the court, especially when its attention was directed thereto by an apt instruction, to correct the error and mischief of such argument and instruct the jury as to the probative force of that testimony and their duty in the premises. *Carey v. C., M. & St. P. R. Co.* 61 Wis. 71, 76; *Hardy v. Milwaukee St. R. Co.* 89 id. 187; *Brown v. Swineford*, 44 id. 282, 292; *Campbell v. Campbell*, 54 id. 90, 98; *State v. McCartney*, 65 Iowa, 522, 525; *Hall v. U. S.* 150 U. S. 76; *Holden v. Pennsylvania R. R.* 169 Pa. St. 1; *Jordan v. Wallace*, 32 Atl. Rep. 174; *Magoon v. B. & M. R. Co.* 67 Vt. 177; *Cohen v. Drake*, 13 Wash. 102; *Surface v. Douglas*, 1 Kan. App. 78; *Mitchell v. Tacoma R. & M. Co.* 9 Wash. 120; *St. Louis & S. F. R. Co. v. Farr*, 12 U. S. App. 520; *Engmann v. Estate of Immel*, 59 Wis. 249.

For the respondent there was a brief by *P. H. Fay*, attorney, and *Rickel & Crocker* and *Richmond & Smith*, of counsel, and oral argument by *Mr. Fay* and *Mr. J. B. Smith*. To the point that all limitations contained in contracts for *interstate carriage* of either persons or property, by which the carrier seeks to limit its liability for the negligence of itself or servants, are void, they cited *Railway Co. v. Stevens*, 95 U. S. 635; *Railroad Co. v. Pratt*, 22 Wall. 123; *Scruggs v. B. & O. R. Co.* 18 Fed. Rep. 318; *Express Co. v. Kountze Bros.* 8 Wall. 342; *Hart v. Penn. R. Co.* 112 U. S. 331; *Bank of Ky. v. Adams Exp. Co.* 93 id. 181; *Railroad Co. v. Fraloff*, 100 id. 24; *Railroad Co. v. Mfg. Co.* 16 Wall. 319; *Myrick v. M. C. R. Co.* 107 U. S. 102; *New Jersey S. N. Co. v. Merchants' Bank*, 6 How. 381; *Thomas v. W., St. L. & P. R. Co.* 63 Fed. Rep. 200; *Bussey v. M. & L. R. R. Co.* 13 id. 330; *Express Co. v. Caldwell*, 21 Wall. 264; *York Co. v. Cent. R. R.* 3 id. 112; *Ayres v. Western R.*

*Corp.* 14 Blatchf. 9; *In re Binford,* 3 Hughes, 295; *The Colon,* 9 Ben. 354; *Ernest v. Express Co.* 1 Woods, 573.

The following opinion was filed April 14, 1896:

PINNEY, J.   1. We think that the evidence on the part of the plaintiff was sufficient to require that the case should be submitted to the jury on some, at least, of the allegations of negligence; and that the defendant's motion for a non-suit, and its request that the jury be instructed to find a verdict for the defendant, were properly denied.  As we have arrived at the conclusion that there must be a new trial, we will abstain from any discussion of the evidence, and content ourselves with stating that the case was clearly one for the jury, under proper instructions as to the law, to determine whether the claim of the plaintiff or that of the defendant as to the cause of the accident was the true one.

There is a question of law presented by these motions, whether by the contract between the plaintiff and the company, and the terms of the " drover's return ticket" issued under it, upon which he was riding at the time of the accident, the plaintiff is precluded from maintaining his action, upon the ground that he had assumed all risks of accident and expressly agreed that the company "shall not be liable under any circumstances, whether of negligence by their agents or otherwise, for any injury to me." This stipulation was part of an entire contract made in Wisconsin, to be performed in part in Wisconsin and in part in Iowa.   It is very well established in this state that a contract for such an exemption from liability by a common carrier is void, as against public policy.  The defendant could not, by any agreement, however plain and explicit, wholly relieve itself from liability for injuries caused by its negligence or the negligence of its agents or employees.  *Abrams v. M., L. S. & W. R. Co.* 87 Wis. 485, and cases cited.   The validity of

such a stipulation was fully considered in that case, and very many authorities were referred to holding against the validity of such an exemption; and the doctrine of the case of *Railroad Co. v. Lockwood,* 17 Wall. 357, in which the question of the validity of an exemption in substance the same as the present case was elaborately considered, was approved and followed, and the conclusion was reached that a railroad company could not thus abdicate the essential duties of its employment, of carefulness and fidelity as a common carrier. This is in accordance with previous decisions of this court there referred to, and the law was held to be the same in the state of Iowa (*Hart v. C. & N. W. R. Co.* 69 Iowa, 490); so that, both by the law and public policy of the place where made and the states within which the contract was to be performed, the provision in question was void, and it can afford no protection to the defendant in this action. We think it plain that the interpretation and validity of this provision are to be governed by the law of Wisconsin, where it was made, as it does not appear that the parties intended to be bound by the law of any other state or country in respect to the contract. *Liverpool & G. W. Steam Co. v. Phenix Ins. Co.* 129 U. S. 397, 450, and cases there cited. This result is in accord with the common law and principles of public policy in all the states.

The proposition that resort cannot be had to the common law to determine the validity of a contract for interstate carriage or transportation, in the absence of any legislation to the contrary by Congress under its power to regulate commerce, is, we think, without support in reason or adjudicated cases. Until Congress shall act in the premises, it is competent for the parties to make any agreement on the subject not void as against the principles of the common law and public policy, to which resort may be had, as the law of the contract, in determining the validity of any of its provisions. Transportation companies, by reason of their control

over the carrying trade, cannot be allowed to exact any stipulation they may choose, and arrogate to themselves the right to regulate commerce, in defiance of the common law and settled principles of public policy. The invalidity of such stipulations in contracts relative to interstate transportation has been declared in very many cases in which the principles laid down in *Railroad Co. v. Lockwood,* 17 Wall. 357, have been applied. In *Liverpool & G. W. Steam Co. v. Phenix Ins. Co.* 129 U. S. 397, 439, it was said that "by the common law of England and America, before the Declaration of Independence, recognized by the weight of English authorities for half a century afterwards, and upheld by decisions of the highest courts of many states of the Union, common carriers could not stipulate for immunity for their own or their servants' negligence." [The constitutional grant to Congress of the power to regulate commerce did not supersede or displace the common law, but conferred upon Congress the power to make such regulations as in its wisdom it saw fit; and, until Congress acts in the premises, the principles of the common law governing such contracts will necessarily apply, and cannot be regarded as obnoxious to the objection that they are regulations of commerce, within the meaning of the constitutional provision.] In the case last cited, it is said that the case of *Railroad Co. v. Lockwood* "rests upon the doctrine that an express stipulation by any common carrier for hire, in the contract of carriage, that he shall be exempt from liability for losses caused by the negligence of himself or his servants, is unreasonable and contrary to public policy, and consequently void. And such has always been the understanding of this court, expressed in several later cases," there cited. *Hart v. Penn. R. Co.* 112 U. S. 331, 338; *Railroad Co. v. Pratt,* 22 Wall. 123, 134; *Railway Co. v. Stevens,* 95 U. S. 655; *Bank of Kentucky v. Adams Exp. Co.* 93 U. S. 181; *Phœnix Ins. Co. v. E. & W. Transp. Co.* 117 U. S. 322. These are full and instructive

cases showing that the provision in question relied on by the defendant to exempt it from liability to the plaintiff is void.

2. The special verdict in this case is fatally defective, in that the question as to what was the proximate cause of the injury to the plaintiff is not substantially answered by it. The third finding, that the ties of the track from the west end of the trestle to switch stand No. 3 were not in good condition at the time, does not attribute the accident to that cause; nor does the seventh finding, that the defendant company was guilty of negligence which occasioned the injury to the plaintiff, meet the requirements of the rule. The verdict leaves the question of the proximate cause of the wreck unanswered. "A special verdict is that by which the jury find the *facts* only, leaving the judgment to the court." R. S. sec. 2857. Whether the negligence of the defendant was the proximate cause of the plaintiff's injury was a vital question, and one sharply litigated; and the defendant had a right to have that question submitted to the jury and passed on by the special verdict. Unless it is substantially answered by the verdict, no judgment can be given on it, and a new trial will be necessary. *Kerkhof v. Atlas P. Co.* 68 Wis. 674; *Kreuziger v. C. & N. W. R. Co.* 73 Wis. 158; *McGowan v. C. & N. W. R. Co.* 91 Wis. 147. The question here was whether the negligence of the defendant was the proximate cause of the plaintiff's injury, the defendant's case going to show that it was not, but that the proximate cause was an entirely independent and adequate one, for which the defendant was not in any way responsible. It was not enough to entitle the plaintiff to recover to show that his injury was the natural consequence of the negligent act or omission of the defendant; but it must have appeared that, under all the circumstances, it might reasonably have been expected that such an injury would result. A mere failure to ward against a result which could not

have been reasonably expected is not negligence. *Atkinson v. Goodrich Transp. Co.* 60 Wis. 141, 156; *Milwaukee & St. P. R. Co. v. Kellogg*, 94 U. S. 469. As was said in *McGowan v. C. & N. W. R. Co.*, *supra:* "The plaintiff was not entitled to recover merely because the injury he had received was in consequence of the defendant's track and roadbed having not been maintained and kept in repair. In order to warrant a recovery, it must have appeared that its failure in this respect was the result of negligence on its part, and that a person of ordinary intelligence and prudence might have expected, as the result of such negligence, that such an injury would occur. . . . The gist of the action is negligence on the part of the defendant, and the relation of cause and effect could be established only by showing that the negligent act or omission of the defendant caused the injury and was its proximate cause." As was said in *Block v. Milwaukee St. R. Co.* 89 Wis. 378: "The negligence is not the proximate cause of the accident unless, under all the circumstances, the accident might have been reasonably foreseen by a man of ordinary intelligence and prudence. It is not enough to prove that the accident is the natural consequence of the negligence. It must also have been the probable consequence." *Barton. v. Pepin Co. Agr. Soc.* 83 Wis. 19; *Huber v. La Crosse City R. Co.* 92 Wis. 636; *Craven v. Smith*, 89 Wis. 119; *Guinard v. Knapp-Stout & Co. Company*, 90 Wis. 129. The defendant owed to the public the duty of a very high degree of vigilance and care in the structure, inspection, repair, and management of its track; and it gave evidence tending to show that it had performed this duty and had no reasonable ground to expect such an accident. The seventh finding of the special verdict goes no further than to find that the accident was the natural consequence of the defendant's negligence, and does not find that the plaintiff's accident was the probable consequence of such negligence, or that such negligence was

its proximate cause; nor does this finding refer in any manner to the third finding, in respect to the ties not being in good condition, as connected with or the cause of the accident. Such a defect in the verdict can be supplied by reference to the evidence only in case the evidence relied on for that purpose is uncontradicted. *Hutchinson v. C. & N. W. R. Co.* 41 Wis. 553; *Sheehy v. Duffy*, 89 Wis. 12. But such was not the present case. In *Abrams v. M., L. S. & W. R. Co.* 87 Wis. 485, there was no dispute as to the proximate cause of the death of the horses, and no question was made as to the sufficiency of the verdict. The case turned wholly upon the validity of the stipulation exempting the company from liability for injuries caused by its own negligence, and limiting the amount of its liability therefor.

3. Whether the negligence of the defendant was the proximate cause of the plaintiff's injury was a vital question in dispute, and it was important that the court, in its charge to the jury, should have instructed them as to the law in this respect, explaining in wnat aspects of the case the defendant's negligence could be considered as the proximate cause of the plaintiff's injury. The charge of the court, like the special verdict, does not deal with this question at all. In submitting the question, "Was the defendant company guilty of negligence which occasioned the injury of the plaintiff?" the court said only: "That is a question for you to answer, and if you find the company was guilty of negligence in this case, which injured the plaintiff, your answer will be, 'Yes.' If you find it was not guilty of negligence, then your answer will be, 'No.'" This, in substance, was all the charge contained on the subject; and, as applied to the evidence, the instruction was an inadequate and misleading one, for it entirely ignored the rule that it was not enough to prove that the injury of the plaintiff was the natural consequence of the negligence of the defendant, but that it must

also have been the probable consequence, and that, under all the circumstances, such an injury might have been reasonably foreseen by a man of ordinary intelligence and prudence. This was an error plainly prejudicial to the defendant, and requires a reversal of the judgment.

4. In the argument of plaintiff's counsel to the jury, he contended that no threats were made by one of the discharged laborers, named Mike Camp, and that no person was seen near the place of the accident about half an hour before the wreck, as claimed by the defendant; whereupon the defendant's counsel asked the court to instruct the jury "that it is a fact established by the testimony that Mike Camp made the threats testified to, and that four persons were seen near the place of the accident about half an hour prior to this wreck, and you are not at liberty to find to the contrary." This instruction was refused. The facts stated in the instruction were testified to by witnesses of apparent intelligence and credibility, who were in no way impeached or contradicted. The plaintiff's counsel, under the circumstances, had no right to make such an unfair and reckless assertion, and the only method of counteracting the injurious effect of this manifest impropriety was by asking for the instruction as soon as the occasion for it occurred. We think that the instruction should have been given. Under the circumstances stated, the jury would have no right capriciously to discredit the testimony; and the court should have instructed the jury as requested, thus correcting the injurious consequences of the improper assertion. It is not to be tolerated that counsel, by reckless or unfounded statements, shall rule the course of the trial and injuriously affect its result.

Several other questions were argued, but as they may not arise on a retrial we decline to intimate any opinion in respect to them.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.

The respondent moved for a rehearing. The following opinion was filed June 19, 1896:

PINNEY, J. The counsel for the plaintiff are in error in supposing that the court has held, or intended to hold, that the defendant company, as a carrier of passengers, was not bound to exercise extraordinary care for their safety, but ordinary care only. The opinion refers to the very high degree of vigilance and care the defendant company owed to the public in the structure, inspection, repair, and management of its track, and that the defendant's negligence could not be considered the proximate cause of the plaintiff's injury, so as to warrant a recovery, unless, under all the circumstances, the accident in question might have been reasonably foreseen by a man of ordinary intelligence and prudence. It is pointed out that the language of the opinion on the subject of proximate cause, as to whether the accident might have been reasonably foreseen by a man of *ordinary intelligence and prudence*, although a correct expression of the law in actions for injuries to property, or where the servant sues his master for damages caused by the negligence of the latter, and the measure of the defendant's duty is ordinary care, is inaccurate, as applied to the present case, where a passenger sues a railway company for injuries received while being carried on its road, and where the defendant is bound to the exercise of *extraordinary* care for his safety. It must be conceded that the criticism as to the use of the expression " ordinary intelligence and prudence," which was inadvertently used, is well founded. It should have been stated instead, that the defendant's negligence could not, in the present case, be considered the proximate cause of the plaintiff's injury, so as to warrant a recovery, unless, under all the circumstances, the accident in question might have been reasonably foreseen by a competent and experienced man accustomed to the structure, inspection, repair, and

management of the roadbed and track of a railway, while in the exercise of extraordinary care and prudence. The opinion is to be considered as modified accordingly. There was no proper instruction, or finding by the jury, upon the question of the proximate cause of the plaintiff's injury; and the erroneous expression does not furnish, nor do we perceive, any sufficient ground for a rehearing.

*By the Court.*— The motion for a rehearing is denied.