# MISSOURI, O. & G. RY. CO. v. MILLER.

No. 4348.   Opinion Filed January 5, 1915.

(145 Pac. 367.)

1.  MASTER AND SERVANT—Injury to Servant—Negligence—Sufficiency of Evidence. Plaintiff was employed by defendant as storekeeper in the city of Muskogee. The storeroom was three-quarters of a mile from the Union depot. The trains in reaching the depot were required to enter over a Y, passing by the storeroom. Plaintiff testified he was ordered by his superior officer to board passenger train No. 1, for the purpose of going to the depot after some rubber hose; that, in attempting to board the train as it was passing his office at the rate of from six to eight miles per hour, his left foot came in contact with a pile of coal which defendant had piled within six inches of the track, and he was thrown under the train and injured; that he did not know the coal was there until he stumbled over it and fell; that had the surface of the ground been smooth there would have been no danger in boarding said train. Defendant moved for a directed verdict. Held, there was sufficient evidence to warrant the submission of the question of defendant's negligence to the jury.

2.  SAME. Defendant was charged with a specific act of negligence in placing a pile of coal in such proximity to the track where plaintiff might reasonably be expected to board defendant's train as to make the place dangerous in boarding its train. Held, that the rule giving defendant a reasonable time in which to remedy the defect or to remove the obstruction has no application.

3.  SAME—Contributory Negligence—Question for Jury. Plaintiff's principal duties as storekeeper were to receive and look after all supplies used by defendant on its trains; to keep an account of same. His duty in looking after the grounds in front of the storeroom and adjacent to the track was incidental to his principal duties. Held, that the facts do not bring the case within the exception to the rule, where a servant is engaged in making a reasonably safe place dangerous, or in making an obviously dangerous place safe. Held, further, that the question of plaintiff's contributory negligence, under all the facts and circumstances, was a question of fact to be determined by the jury.

4.  SAME—Proximate Cause. Plaintiff alleged and testified that he was ordered by his superior to board the train at the time, place, and in the manner in which he attempted to board same. Defendant admitted piling the coal near the track a short time before the accident. Plaintiff claimed to have had no knowledge of said coal until he was injured. Held, the question of ap-

proximate cause of the injury was an issue of fact to be determined by the jury.

5.    **APPEAL AND ERROR—Evidence—Harmless Error—Expert Testimony—Subject-Matter.** A question was propounded to the witness Kiersey, who qualified as an expert, as follows: "Suppose the surface was smooth along the track and the passenger coach should be coming along, an ordinary passenger coach, going at the rate of six to eight miles an hour, to an experienced man in catching moving trains, would there be any danger incident to the catching of the same?" Answer: "No danger to an experienced man. I mean by that, if a man is experienced in catching trains under those circumstances, necessarily he should not be in danger in catching trains at that rate per hour, because he would necessarily use precaution." To this question defendant objected, upon the ground that it was not a proper subject for expert testimony. Held, not error. Held, further, if error, it was harmless, in that plaintiff testified to the same effect, without objection, which testimony is not controverted.

6.    **MASTER AND SERVANT—Injury to Servant—Instructions.** Complaint is made to paragraphs 4, 5, and 8 of the court's instructions to the jury. Held, upon an examination of said instructions in connection with the whole charge of the court, we find that the law applicable to the facts was fairly given to the jury.

7.    **MASTER AND SERVANT—Trial—Injury to Servant—Instructions—Repetition—Weight of Evidence.** Defendant complained of the action of the court in refusing to submit to the jury special requested instructions Nos. 3, 7, and 9. Held, that the court fairly gave to the jury the law applicable to the issues made by the pleadings and the evidence, and substantially included in its charge requested instructions Nos. 3 and 9; and that requested instruction No. 7 is not a correct statement of the law.

(Syllabus by the Court.)

*Error from District Court, Pontotoc County;*

*Tom D. McKeown, Judge.*

Action by W. E. Miller against the Missouri, Oklahoma & Gulf Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

*E. R. Jones and J. C. Wilhoit (Arthur Miller* of counsel), for plaintiff in error.

*W. N. Maben* and *C. A. Galbraith,* for defendant in error.

RIDDLE, J. The parties will be referred to here as they were in the trial court. Plaintiff alleges substantially that he was employed by defendant as storekeeper in the city of Muskogee; that it was his duty to collect, take charge of, and distribute the supplies used by defendant on its train, and to go from the storeroom to the depot and receipt for all supplies; that, as part of his contract of employment, defendant was to furnish plaintiff with transportation for himself and supplies from the storeroom to the depot, a distance of about three-quarters of a mile; that defendant operated a passenger train which it would back over a Y, passing the storeroom; that plaintiff was directed to board said train by defendant's superior officer, who had authority to give such instructions, to use said passenger train as a means of transportation of himself and supplies; that the employees in charge of said train were in the habit of showing up the speed at the rate of about six miles per hour, for the purpose of permitting plaintiff and the other employees to board same; that on the date of the accident one H. P. Abbey, purchasing agent for defendant, and who was plaintiff's foreman and superior, having authority, directed plaintiff to catch said train as the same passed the storeroom about the hour of 10:30 a. m. for the purpose of going to the passenger depot after a steam hose, and to bring the same back when the train returned; that said agents and servants aforesaid caused a large pile of coal to be placed near said storeroom, but that in so doing its said servants and employees negligently and carelessly placed the same within about six inches of the railway track where said passenger train had to pass; that all said acts of defendant, its agents and servants, were known to said defendant, but were unknown to plaintiff; that the placing of said coal in such close proximity to said track rendered said place unsafe for plaintiff and said employees; that the ground was smooth along near said storeroom where said passenger train passed, and when said train approached said storeroom, going in

the direction of the passenger depot, plaintiff stepped out near by to catch said train, upon the order of his said superior, and used due care and caution for his own personal safety; that there was no danger in attempting to board said train at said time, but for the negligence of said defendant, its agents and servants, in causing said pile of coal to be placed at said point, of all of which acts of negligence plaintiff was ignorant, and could not by the exercise of ordinary care and diligence have discovered same; that plaintiff, before catching said train and before placing his foot on the step, and while in the act of placing his right foot on the step on said passenger coach, his left foot and leg came in contact with said pile of coal, causing his foot to slip and be caught by the wheels of said train and run over, the injury causing the amputation of his foot, as aforesaid. He prayed for judgment for the sum of $20,000. Defendant filed its answer, consisting of a general denial and pleading contributory negligence; specially alleging that plaintiff's duty did not require him to board moving trains for the purpose of reaching the depot, and that it did not owe plaintiff the duty of keeping said right of way free from obstructions, and was not required to anticipate that the place where the coal was put would be used by defendant in error, or any other person, as a place to board moving passenger trains. To this answer, plaintiff filed a reply. A trial was had to a jury, resulting in a verdict and judgment in favor of plaintiff for the sum of $5,000, from which judgment defendant prosecutes this appeal.

Defendant presents and argues the following assignments:

"(1) The trial court erred in refusing to give a peremptory instruction requested by the plaintiff in error at the conclusion of all the testimony in the case. (2) The trial court erred in admitting incompetent evidence offered by the defendant in error. (3) Because of errors of law occurring at the trial. (4) The trial court erred in giving to the jury its instructions Nos. 4, 5, 7, and 8. (5) The trial court erred in

refusing to give to the jury instructions requested by the plaintiff in error Nos. 3, 7, 9, and 15. (6) The trial court erred in overruling the motion of plaintiff in error for a new trial."

The testimony of plaintiff tends to support all the material allegations of his petition; while the testimony on the part of defendant contradicts that of plaintiff and tends to support the theory of defendant. Defendant insists that the court erred in refusing to give a peremptory instruction. Counsel assign and argue four reasons why the action of the court is error. The first reason assigned is that where a servant is furnished in the first instance with a reasonably safe place to work, and it is made the duty of the servant to maintain the place in a reasonably safe condition, he cannot complain if that place, which he was charged with maintaining in such condition, becomes unsafe. The question as to whether or not it was plaintiff's duty to keep the place in a safe condition was controverted. While one of defendant's witnesses testified that it was the duty of plaintiff to superintend the storeroom and the grounds between it and defendant's track and keep them clear of obstructions, yet the reasonable deduction to be drawn from plaintiff's testimony is to the contrary. On both direct and cross examination, plaintiff testified relative to his duty under his contract of employment, and clearly negatived the idea that he was to keep the premises free from obstructions. If true, as contended by defendant, yet looking after and superintending the premises was merely incidental to plaintiff's principal duties, and would not bring the case within the rule contended for. If the act of the defendant in placing the coal too near the track was negligence, and if the act of the servant must be regarded the act of the master, then we have an affirmative act of the defendant, constituting primary negligence, of which plaintiff says he had no knowledge, before or at the time of the injury. This was one of the controverted points in the case, and plaintiff could not be deprived of going to the jury on this issue, because he had failed to remove an obstruction of which he knew nothing, and the exist-

ence of which, under the circumstances, he was not required to know. This case does not fall within the exception, which is where the servant is employed to make a reasonably safe place dangerous, or an obviously dangerous place safe, the master is not liable for an injury resulting on account of such place becoming dangerous by reason of failure of the servant's nonperformance of his duty. *Sulsberger v. Castleberry,* 40 Okla. 613, 139 Pac. 837; *C., R. I. & P. Ry. Co. v. Townes,* 43 Okla. 568, 143 Pac. 680; 26 Cyc. 119. The authorities relied upon by defendant to sustain its contention under this proposition are not in point.

It is next urged that, under the undisputed evidence in this case, the place defendant provided for employees to board its trains was not the place where the coal was situate, nor where the injury occurred. We agree with counsel that it was the theory of the defense—and all the witnesses who testified for defendant seem to agree—that employees, including plaintiff, were only authorized to board defendant's trains on the opposite side of the track from where plaintiff was injured; but plaintiff's theory and his testimony was to the contrary. The undisputed facts show that, coming into Muskogee from the main line, defendant maintains a Y; that the storehouse and the master mechanic's office are situate about three-quarters of a mile from the Union depot, where defendant stops for passengers to alight and board its trains; that the storehouse in which plaintiff was required to work was situate inside of this Y, and just north of the south track of the Y; that the master mechanic's office was situate just on the south side of the south track of the Y. In other words, the south track of the Y is between the master mechanic's office and the storehouse. Upon this issue, plaintiff testified substantially as follows:

"I had a conversation with Mr. Abbey with reference to those supplies. I told him Mr. Greeley was complaining of the lack of steam hose, and he told me they were at the depot at that time, and if they were needed so badly, for me to take the

train down and go to the depot and get sufficient number and bring them back with me. A few minutes after Mr. Abbey left, I was sitting in my office and saw the rear end of the train through the office door coming towards the storeroom, and I got up and went out through the door, and it was not but a very few feet to the track. The rear end of the train had then passed me, and I jumped to catch the second coach, and in doing so I had lifted my right foot from the ground, preparatory to mounting the steps, and had hold of the grabirons on the coach, and my feet came in contact with a pile of coal, and I was thrown under. Mr. Abbey came there in a buggy and told me to go about ten minutes before this train came by. I had been boarding that train ever since my employment going to Muskogee on No. 1. It did not stop at the storeroom to let me on. I jumped on while it was in motion. I knew the train did not stop there and passengers were not supposed to get on there. They had been stopped there by me by flagging on different occasions. I was on my side when I did this flagging. The side I was on the engineer rode on, and to get the best results, would be to give the flag there. I have had practically a lifetime of experience in catching trains; have been in the railroad service twelve years. There was no danger whatever in attempting to catch the train there, if the surface of the ground had been smooth and no obstruction. The left side of my left foot came in contact with the coal at or below the ankle, and knocked my feet out from under me, toward the train, and the weight of my body pulled my hands loose from the grabirons. They would let me use other trains, but told me to catch No. 1, because it ran at the time when it was convenient in going to the depot, and in going back it always stopped to take off supplies.

After testifying Brown had instructed him to use train No. 1, he continued:

I followed out those instructions on a number of occasions. I had a conversation with the general superintendent of the M., O. & G. relative to boarding passenger trains. I think his name was Fisher. He was at the shops. I told him Mr. Brown said in any case where the goods were of such a small quantity I could bring them down on this train, and could catch this train and go to the depot at Muskogee and get them and return on

same train. I asked him if this was O. K., and he said it was. He was preparing to catch the train, and caught it on numerous occasions, and I caught it with him at that time.

It is the theory and contention of defendant that its employees could flag the train only from the south side of the track, next to the master mechanic's office, while the testimony of plaintiff shows that he had been flagging it from the other side of the track, and had caused it to stop on other occasions. Besides, plaintiff testifies positively that he and other employees had been boarding moving trains at this place for quite awhile; that he was directed to take this train to go after the hose. The evidence shows that he was an experienced railroad man; that the train coming from Wagoner, Okla., to reach the depot at Muskogee, was required to back in on this Y, and back down by the master mechanic's office and the storeroom; that, a few minutes after Mr. Abbey had directed him to go after the hose, he was sitting in his office, and noticed the rear end of the train as it was backing in about even with the storeroom; and he ran out, and the rear end of the coach had just passed the door when he ran and jumped for the second coach at the time of the injury. Under the circumstances as detailed by him, it would, perhaps, have been impossible, and if not impossible, extremely dangerous, to run in behind the train and cross the track while the train was backing. Plaintiff further testified that he and the general superintendent, a short while before the accident, boarded the moving train at the same place where he attempted to board it on this occasion; that the superintendent ratified Brown's instructions. Under the theory and evidence of plaintiff, it was permissible to board the train from either side. In view of the specific instruction, under which plaintiff claims to have been acting at the time of the injury, and under the facts and circumstances, we hold that plaintiff was not acting outside the scope of his employment at the time of the injury; neither did the testimony so conclusively sustain defendant's theory as to make it the duty of the court to direct a verdict in favor of defendant.

The third reason assigned and argued is that the coal over which plaintiff stumbled was deposited near the track not more than one hour before the accident; that this was not an unreasonable length of time to leave it there and negligence could not be imputed from the fact that it was left there for that time. We do not understand that plaintiff sought to recover of defendant by reason of not removing the obstruction within a reasonable time after it had been placed near the track. Plaintiff charges defendant with primary and a positive act of negligence in placing the coal in such proximity to the track as to make dangerous the place where plaintiff was instructed to board said train. If defendant was negligent in this respect, then it naturally and logically follows that no notice was necessary, and defendant would not be entitled to any certain length of time to remove the obstruction. It was defendant's act in placing the coal too near the track, and not its failure to remove same, to which complaint is made. This state of facts is governed by an entirely different rule of law from that relied upon by defendant. It is not a case where, in the ordinary use of machinery or other appliances a defect occurs, or an obstruction accidentally is placed near or about such machinery as to render it unsafe. In such case the master is generally entitled to a reasonable time within which to remedy such defect or to remove the obstruction; and, in the absence of actual notice, knowledge will be imputed after the expiration of a reasonable time. This is the holding of the authorities relied upon by defendant. But defendant is charged here with primary negligence—a specific act of negligence in placing an obstruction so near the track, making the place where plaintiff was required to work unsafe, and as a result thereof plaintiff was injured. If defendant were guilty of negligence in placing the coal too near to the track so as to make it unsafe for plaintiff, and if plaintiff was injured as a result of said act of negligence within three minutes thereafter, defendant would be liable. Plaintiff does not make any charge against the defendant for unloading or piling coal on its prem-

ises to be used in the stove in the storeroom, but in unloading the coal and piling it too near the track, so as to make the place dangerous in boarding the train. Had the coal been piled a reasonable distance from the track, no doubt there would have been no occasion for any complaint.

Approaching the fourth reason, it is contended that the act of the defendant in piling the coal and permitting it to remain near the track was not the proximate cause of the injury, but that it was the act of plaintiff in rushing out and attempting to board a moving train. This contention is untenable. It is true, had paintiff remained in the storeroom and not attempted to board the train, he would not have been injured at this time and by this particular train. It is also reasonably certain that, had the coal not been piled near this track, plaintiff could and would have boarded the train safely; but according to plaintiff's theory, under his employment and under instructions of his superior, he was required to board this train. If his testimony is true, after he first noticed the train, it would have been most impossible for him to have run around the train and flagged it from the opposite side, for the end of the rear coach had already passed his door when he ran out. The question is: When an experienced railroad man, who has been accustomed to boarding moving trains, was presented with a condition of this kind, what action is he authorized to take? What would have been reasonable to expect of a man of his experience in performing the duty which he was called upon to perform? If he performed this duty as a reasonable man, engaged in such work with his experience under the same conditions and circumstances would have performed it, and in obedience to orders of a superior, who was authorized to give such orders, then it cannot be said that his acts were the approximate cause of the injury. Strictly defined, an act is the "proximate cause" of an event, when in the natural order of things and under the particular circumstances surrounding it such an act would necessarily produce that event; but the practical construction of "proximate

cause" by the courts is a cause from which a man of ordinary experience and sagacity could foresee that the result might probably ensue. *Enochs v. Pittsburgh, C., C. & St. L. Ry. Co.,* 145 Ind. 635, 44 N. E. 658. Or, as stated by some of the courts, where the question is whether a cause proximated to the accident, the test is whether it was such that a person of ordinary intelligence and prudence should have foreseen that the accident was liable to be produced by that cause. *Wilber v. Follansbee,* 97 Wis. 577, 72 N. W. 741, 73 N. W. 559; *Block v. Milwaukee St. Ry. Co.,* 89 Wis. 371, 61 N. W. 1101, 27 L. R. A. 365, 46 Am. St. Rep. 849; *Davis v. Chicago, M. & St. P. Ry. Co.,* 93 Wis. 470, 67 N. W. 16, 1132, 33 L. R. A. 654, 57 Am. St. Rep. 935. Where different forces and conditions concur in producing a result, it is often difficult to determine which is proper to be considered the cause. The law will not go further back than to find the active, efficient, and procuring cause, of which the event under consideration is a natural consequence. *Freeman v. Mer. Mut. Acc. Ass'n.* 156 Mass. 351, 30 N. E. 1013, 17 L. R. A. 753. See, also, *City Council of Montgomery v. Wright,* 72 Ala. 411, 47 Am. Rep. 422; Shear. & R. Neg. sec. 10; *Williams v. So. Pac. Ry. Co.* (Cal.) 9 Pac. 152; *Texas & P. Ry. Co. v. Woods,* 8 Tex. Civ. App. 462, 28 S. W. 416; *American Exp. Co. v. Risley,* 179 Ill. 295, 53 N. E. 558; *Missouri, K. & T. Ry. Co. v. Byrne,* 100 Fed. 359, 40 C. C. A. 402.

Applying this definition to the facts in the instant case and accepting plaintiff's theory of the case as true, defendant might expect him under the circumstances to board the train at the time and in the manner in which he undertook to board it; and, with this in mind, it seems to us the approximate cause of the injury was the act of defendant piling the coal so near the track that it would be probable that plaintiff, in attempting to board this train, would likely come in contact with such coal, resulting in the accident or injury complained of. In any event, the facts of this case made an issue to be submitted to the jury;

and having been submitted to the jury, and it having found a general verdict in favor of plaintiff, its finding is conclusive upon this court. *C., R. I. & P. Ry. Co. v. Brazzell*, 40 Okla. 460, 138 Pac. 794.

Under the second assignment of error, it is contended that the trial court erred in admitting incompetent evidence. The particular complaint is to the action of the court in permitting one Kiersey to testify, after being qualified as an expert, that under similar circumstances under which plaintiff undertook to board the train in question it was not necessarily dangerous. The following question was propounded to the witness:

"Suppose the surface was smooth along the track and the passenger coach would be coming along, an ordinary passenger coach, going at the rate of six to eight miles an hour, to an experienced man in catching moving trains, would there be any danger incident to the catching of the same?

Witness answered:

"Not dangerous to an experienced man. * * * I mean by that, if a man is experienced in catching trains under those circumstances, necessarily he should not be in danger in catching trains at that rate per hour, because he would necessarily use precaution."

The main objection urged to this testimony is that the facts are not such that call for expert testimony; that the expression of opinion by this witness was an invasion of the right of the jury. If by this question it was sought to develop information about which the ordinary mind would be expected to possess as much knowledge as the witness, the objection would have been good; but we cannot agree with defendant in the application of the rule. While it would, perhaps, appear to the ordinary mind that there is more or less danger for any one to attempt to board a moving train, yet it is common knowledge to all that experienced railroad men hourly and daily board trains while running from a mile to several miles per hour, and

no more accidents occur on account thereof than occur in the discharge of duties in other departments which do not require boarding moving trains. What would appear to be dangerous to the ordinary mind in boarding a moving train might be considered by an experienced man, who is accustomed to boarding trains under such conditions and circumstances, practically free from danger; and the jury, while possessing the same knowledge as would be expected to be possessed by the ordinary man, yet it is not presumed that the jury was possessed of that peculiar knowledge that comes to railroad men from long experience. Without the testimony of an expert, the jury would not be expected to know whether or not under the existing conditions it was negligence *per se* for plaintiff to undertake to board the moving train in question. We are of the opinion that the court committed no error in admitting this testimony. And this, too, for another reason, to-wit: Plaintiff testified to practically the same facts, without any objection; and his testimony is not controverted. Besides, this matter was largely in the sound discretion of the trial court. 17 Cyc. 28, 62, 65. Had plaintiff sought to prove by this witness whether plaintiff was negligent or was free from negligence, in an attempt to board the train in question, under the circumstances, then it would have been objectionable as an invasion of the province of the jury.

Defendant's counsel have abandoned the third assignment of error.

Under the fourth assignment, defendant complains of the action of the court in submitting paragraphs 4, 5, 7, and 8 of its charge to the jury. Paragraph 4 reads:

"The jury are instructed that if you find and believe from the evidence that the plaintiff was employed by the defendant in the capacity of storekeeper, and further find and believe from the evidence that it was a part of his duties to go from the storeroom to the union depot for the purpose of receiving and transporting supplies from the union depot to the storeroom,

and if you find and believe from a fair preponderance of the evidence that the defendant permitted or invited the plaintiff and other employees to board its passenger train in front of the storeroom in which the plaintiff was employed, then it would be the duty of the defendant company to use ordinary care in keeping said place reasonably safe, as would protect the plaintiff in the performance of his duty in boarding the passenger train of the defendant."

It is contended that this charge is erroneous, because it does not clearly define the place where the employees were to board the train of defendant. In considering whether or not this was prejudicial error, we must presume that that jury received it in the light of the facts and circumstances before them and as applied to plaintiff's theory of the case. The only theory plaintiff had in regard to this branch of his case was that he had authority generally to board the train while moving, on the side next to the storeroom, and that in this particular instance he was ordered by his superior to so board the train; and that he and the superintendent at a previous date had boarded the train at the same place and in the same manner. This charge was given to meet plaintiff's theory, and could only have been understood by the jury as applying to the evidence bearing upon the point where plaintiff actually boarded the train, and we are clearly of the opinion that the jury was not in any way misled in this respect. When the court used the words, "in front of the storeroom," the jury could not reasonably be expected to have understood the court to mean "on the opposite side of the track, in front of the master mechanic's office." There was no testimony of plaintiff directed to the opposite side of the track.

What we have said in response to the first reason assigned by counsel why this charge is misleading will apply to the second reason. It is argued that the following language is prejudicial, to wit:

"To use ordinary care in keeping said place reasonably

safe, as would protect the plaintiff in the performance of his duty in boarding the passenger train of the defendant."

It is claimed that this language is equivalent to the court telling the jury that the master was an insurer of the safety of the servant. This language, standing alone, might be subject to the criticism offered; but in connection with the full section of the charge, considered with the whole charge, we are unable to agree with this contention. Taking the whole charge, the court made it clear to the jury that defendant in this case was not an insurer of the plaintiff against injury. This holding is in harmony with the rule laid down by Mr. Labatt in his work on Master and Servant. The latter part of section 920 reads:

"Hence it is error to · use the epithets, 'safe,' 'secure,' 'safe and sound,' or the like for the purpose of describing the instrumentalities which the master is bound to furnish, unless it is also made quite clear to the jury that he is only required to use ordinary care in furnishing instrumentalities answering the description."

The language used by the court was that:

"It would be the duty of defendant company to use ordinary care in keeping said place reasonably safe as would protect the plaintiff in the performance of his duty in boarding the passenger train of defendant."

The jury would understand by this that if defendant used ordinary care in keeping said place reasonably safe and plaintiff was injured, then defendant would not be liable for such injury. The jury would not be warranted in finding, and we think was not led to believe, that defendant was required to keep this property in such condition as would protect plaintiff against any injury.

Section 5, to which complaint is made, reads:

"The jury are instructed that if you find and believe from a fair preponderance of the evidence that the plaintiff, while in

the employment of the defendant, was directed by a superior officer to board a passenger train and go to the union depot for the purpose of getting some steam hose, and bringing the same back to the storeroom, and that the plaintiff, in obedience to the command of his superior officer, attempted to board the moving passenger train of the defendant at a point where the defendant permitted or invited the plaintiff or its other employees to board the said passenger train, and that it was not dangerous or hazardous and that it was not obvious to him at the time, and that the plaintiff used at the time such care and discretion as an ordinarily prudent person would have used at the time, and that in attempting to board the train he was tripped by a pile of coal placed at this point; and if you further find and believe from a fair preponderance of the evidence that the said coal had been placed there by the servants or employees of the defendant in the course of their duties, and that the same was negligently placed there, or was negligently permitted to remain at the place and to render the place unsafe for the plaintiff and other employees to board said passenger train, and that the plaintiff, by reason of tripping, fell and his foot was crushed and injured; and you further find that the negligence, if any, of the servants in placing the coal at that place or permitting the same to remain at that point was the direct and proximate cause of plaintiff's injury, if any; and you further find that the plaintiff could not, by the use of ordinary care, have discovered the coal in time to have avoided the accident—then your verdict should be for the plaintiff."

The exact language to which the objection is urged in referring to the coal which was beside the track, "or was negligently permitted to remain at the place and to render the place unsafe for the plaintiff and other employees to board said passenger train," it is urged that this deprived defendant of its right to be relieved of any liability in the event the testimony showed that it had used reasonable care to keep its premises in a reasonably safe condition. As said in answer to defendant's contention and its criticism to instruction 4, we are not permitted to carve out a sentence in any certain paragraph of the court's charge and consider it standing alone, when passing upon the question as to whether or not the court committed, prejudi-

cial error. The court cannot include its charge applicable to the issues in one sentence, or any one paragraph; and the jury in this case was directed and required by the court to consider the charge as a whole. This instruction, fairly considered and construed, is not subject to this criticism. Counsel, in discussing the alleged defect in this instruction state:

"The master, under the settled law of the land, is relieved from liability, unless his knowledge, actual or constructive, of a defective appliance or premises, was obtained sufficiently long before the injury was received to have enabled him to adopt remedial measures."

They cite quite a number of cases to sustain this proposition. This, no doubt, is the law, applied to a state of facts which would make it applicable; but, as we have said, it has no application here. If defendant was guilty of primary negligence, as charged, in piling this coal too near the track, making the place dangerous as alleged, certainly the master would not be entitled to a reasonable time within which to relieve it of the negligence. In any event, after the plaintiff had been injured as a result of defendant's negligence it could not set up as a defense that, while it was guilty of primary negligence in placing the obstruction upon its premises, yet it could not be held liable, for the reason it was entitled to a reasonable time within which to become acquainted with the situation and remove the obstruction. To state the contention is a sufficient argument against it.

Instruction 8, to which complaint is made, we find, from an examination and application to the facts, is not defective in the manner claimed. Considering this paragraph of the instruction as a whole, it is not subject to the construction placed thereon by counsel for defendant.

Under assignment No. 4, it is urged that the court committed error in refusing to give to the jury certain instructions, requested by defendant, to wit, Nos. 3, 7, 9, and 15. Instruction No. 3 is as follows:

"The court instructs the jury that contributory negligence on the part of plaintiff defeats his right of action, and, if you believe from the evidence that the plaintiff failed to exercise ordinary care to avoid injury to himself, then you should find for the defendant."

The court gave, at the request of defendant, instruction No. 2, which is as follows:

"The court instructs the jury that, although an injury may be inflicted upon this plaintiff by this defendant, nevertheless if this injury was contributed to naturally and proximately by the situation of peril into which the plaintiff, by his own neglect or carelessness or lack of discretion, had placed himself, the plaintiff must be considered as the party solely at fault, and as the author of his own misfortune, and the jury will find a verdict for the defendant."

It will be seen that the propositions included in requested instruction No. 3 are substantially included in instruction No. 2, which the court gave; but they are couched in different language, and are more favorable to defendant. They both are intended to submit defendant's theory of the case upon the question of contributory negligence. The court committed no prejudicial error in refusing to give this requested instruction.

Complaint is made to the action of the court in refusing to give instruction No. 7, requested by defendant, which is as follows:

"The court instructs the jury that if they believe from the evidence that the coal over which the plaintiff is alleged to have stumbled was placed along the track and was in the yards of this defendant and not at a public crossing or a thoroughfare, or at a station ground or at a place where this train regularly stops, then the defendant has the right to place said coal there, and it was not negligence on the part of the defendant in any particular so to do, and if you believe that by reason of the coal being there the plaintiff was injured, and that the said coal was the cause of his injury, you will find for the defendant."

The court did not commit error in refusing to give this

instruction, for the reason that it is a charge directly upon the weight of the evidence, and is not a correct statement of the law as applied to the issue and evidence on this point. It was not the act of defendant in unloading the coal that plaintiff alleges caused the injury, but it was the negligence of defendant, placing the coal too near the track. Although defendant had a right to unload the coal on its premises, yet if it did so in such a negligent manner or piled it at a place where it would render its premises unsafe for its servants to perform the duties required of them, it might be liable for an injury, although it had a perfect right to unload the coal on the premises. Hence the court did not err in refusing to give this instruction.

It is next contended that the court committed error in refusing to give requested instruction No. 9, which is as follows:

"The court instructs the jury that ordinarily an employee is required to obey the proper order of his superior officer; but you are further instructed that, if this order would require the servant to place himself in a position that was obviously dangerous, it is then the servant's duty to decline to obey such order, and if he does not decline to obey, but, on the contrary, does obey, and his injury is occasioned thereby, he is then held to contribute to his own injury. And in the case at bar, if the jury believe that the defendant's officer superior to the plaintiff herein ordered the plaintiff to board a passenger train, and if it was obviously dangerous for him so to do, and he was hurt thereby, you will find for the defendant."

This same proposition was couched in instruction No. 10, given to the jury by the court. Hence no error in failing to submit this one. It is admitted, in effect, by counsel that the general charge covers the same proposition; but they claim to have a right to have the jury specifically called to this state of facts, included in this instruction. Not true, however.

We have carefully examined the charge of the court and find that all the issues were fairly and fully submitted to the

jury; that there were sufficient facts and circumstances warranting the court in submitting the issue to the jury, and its finding in favor of plaintiff is conclusive upon this court.

Finding no prejudicial error, the judgment of the trial court is affirmed.

All the Justices concur.